UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SHIRLEY NWACHUKWU,<br>　　　Plaintiff, | : | CIVIL ACTION NO.<br>3:13-cv-1539 (JCH) |
| v. | : | |
| CONNECTICUT DEPARTMENT OF<br>LABOR,<br>　　　Defendant. | : | NOVEMBER 24, 2015 |

**RULING RE: MOTION FOR SUMMARY JUDGMENT (DOC. NO. 54)**

## I.　INTRODUCTION

Plaintiff Shirley Nwachukwu ("Nwachukwu") brought this action against the Connecticut Department of Labor ("DOL"), alleging: (1) discrimination on the basis of race, in violation of Title VII of the Civil Rights Act of 1964; (2) retaliation, in violation of Title VII; and, (3) discrimination on the basis of race, in violation of section 1981 of title 42 of the United States Code, as enforced through section 1983. See Complaint (Doc. No. 1) ("Compl."). The allegations stem from the plaintiff's unsuccessful application for a job promotion within the DOL.

On November 11, 2014, the court dismissed the section 1981 claim. See Ruling (Doc. No. 45). Accordingly, only the Title VII claims remain. The DOL has moved for summary judgment as to these claims. See Motion for Summary Judgment (Doc. No. 54) ("Mot. for Summ. J.").

For the following reasons, the Motion is denied.

1

**II.     FACTUAL BACKGROUND**

In September 2009, the DOL posted a job opening for the Waterbury Job Center Director ("JCD") position, for which Nwachukwu applied. See Deposition of Shirley Nwachukwu 23:8-16 (Doc. No. 54 Ex. A) ("Nwachukwu Dep."). In mid-November 2009, Nwachukwu had a first-round interview for the position. See Defendant's Local Rule 56(a)(1) Statement ¶ 2 (Doc. No. 54-2) ("Def.'s L.R. 56(a)(1) Stmt."). The three interviewers were Carl Buzzelli ("Buzzelli"), Rise Caron ("Caron"), and Mark Polzella ("Polzella"). Id. Nwachukwu did not receive a second-round interview. Recommended Candidate Memorandum 9 (Doc. No. 54 Ex. I) ("Rec. Candidate Mem."). Of the 23 applicants for the JCD position, eight were African-American, Hispanic, or Asian. Def.'s L.R. 56(a)(1) Stmt. ¶ 28. Six candidates were awarded second-round interviews, one of whom was African-American and one of whom was Hispanic. Id. Upon completion of the second-round interviews, the interviewers recommended that Stephen Romano ("Romano"), who is Caucasian, be hired for the position. Rec. Candidate Mem. at 15. Although the interviewers provide a recommendation, the ultimate hiring power lies with the DOL Commissioner, or her designee. See Caron Affidavit ¶ 22 (Doc. No. 54 Ex. C) ("Caron Aff."). Romano was hired after Deputy DOL Commissioner Linda Agnew (the designee of the DOL Commissioner) approved. See DOL Workforce Request 1 (Doc. No. 54 Ex. H).

Nwachukwu began working at the DOL in 1987. Nwachukwu Dep. at 21:4-6. In 1997, Nwachukwu filed a lawsuit in state court against the DOL. Def.'s L.R. 56(a)(1) Stmt. ¶ 4. Nwachukwu and the DOL eventually settled that lawsuit for roughly $30,000. Nwachukwu Dep. at 14:7-12.

In 2008, Nwachukwu applied for the JCD position in the Hartford office. See Def.'s L.R. 56(a)(1) Stmt. ¶ 18. According to Polzella, who was on the panel that interviewed the plaintiff for the Hartford position, the plaintiff received a first-round interview for that position, but was neither recommended for, nor received, a second-round interview. See Deposition of Mark Polzella 126:15-18 (Doc. No. 54 Ex. B) ("Polzella Dep."). Instead, the Hartford interviewers recommended that Romano receive the Hartford JCD position. Id. at 127:9-13. However, Patricia Mayfield ("Mayfield"), the DOL Commissioner at the time, overruled the interview panel's recommendation and instead awarded the position to Nwachukwu. Id. at 127:18-21. Ultimately, Nwachukwu did not accept the Hartford position because she felt that the increased compensation did not sufficiently counterbalance her increased commuting costs to Hartford daily. Def.'s L.R. 56(a)(1) Stmt. ¶ 19. The Hartford and Waterbury JCD positions are essentially the same job, except in different cities. Id. ¶ 18. Both in 2008 and in 2009, Nwachukwu was a Program and Services Coordinator ("PSC") at the DOL. See Nwachukwu Dep. at 21:12-22:14.

### III.   LEGAL STANDARD

On a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); White v. ABCO Engineering Corp., 221 F.3d 293, 300 (2d Cir. 2000). Once the moving party has met its burden, in order to defeat the motion, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial," Anderson,

477 U.S. at 255, and present such evidence as would allow a jury to find in his favor. Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000).

In assessing the record to address questions of fact, the trial court must resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought. Anderson, 477 U.S. at 255; Graham, 230 F.3d at 38. However, "only admissible evidence need be considered by the trial court in ruling on a motion for summary judgment." Raskin v. Wyatt Co., 125 F.3d 55, 66 (2d Cir. 1997). Summary judgment "is properly granted only when no rational finder of fact could find in favor of the non-moving party." Carlton v. Mystic Transp., Inc., 202 F.3d 129, 134 (2d Cir. 2000). "When reasonable persons, applying the proper legal standards, could differ in their responses to the question" raised, on the basis of the evidence presented, the question must be left to the finder of fact. Sologub v. City of New York, 202 F.3d 175, 178 (2d Cir. 2000).

## IV. DISCUSSION

### A. Discrimination on the basis of race claim

Nwachukwu's Title VII race discrimination claim is analyzed under the burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Kirkland v. Cablevision Sys., 760 F.3d 223, 225 (2d Cir. 2014). "Under McDonnell Douglas, a plaintiff bears the initial burden of proving by a preponderance of the evidence a prima facie case of discrimination; it is then the defendant's burden to proffer a legitimate nondiscriminatory reason for its actions; the final and ultimate burden is on the plaintiff to establish that the defendant's reason is in fact pretext for unlawful discrimination." Abrams v. Dep't of Pub. Safety, 764 F.3d 244, 251 (2d Cir.

4

2014).  The Second Circuit has "repeatedly expressed the need for caution about granting summary judgment to an employer in a discrimination case where, as here, the merits turn on a dispute as to the employer's intent." Holcomb v. Iona Coll., 521 F.3d 130, 137 (2d. Cir. 2008).  This is so because "direct evidence of that intent will only rarely be available, so that affidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination." Id. (internal quotation marks omitted).  That said, "[e]ven in the discrimination context, however, a plaintiff must provide more than conclusory allegations to resist a motion for summary judgment." Id.

        i.      Prima Face Case of Discrimination

"To state a prima facie case of race discrimination, a plaintiff must proffer evidence that (1) he belongs to a protected group; (2) he was qualified for his position; (3) his employer took an adverse action against him; and (4) the adverse action occurred in circumstances giving rise to an inference of race discrimination." Kirkland, 760 F.3d at 225.  "[T]he plaintiff's burden in establishing a prima facie case of discrimination is admittedly de minimis . . . " Hongyan Lu v. Chase Inv. Services Corp., 412 Fed.Appx. 413, 418 (2d Cir. 2011).  The DOL concedes that Nwachukwu has met her burden as to the first three requirements, and argues only that she has not met the final requirement.  Memorandum in Support of Motion for Summary Judgment 12-13 (Doc. No. 54-1) ("DOL Mem. in Supp.").  However, given that Nwachukwu had been offered the Hartford JCD position one year earlier, that the Hartford and Waterbury JCD positions were functionally identical, that Nwachukwu was not even invited to a second-round interview when she applied for the Waterbury position, and that a Caucasian

applicant with relatively similar paper credentials was awarded the position, Nwachukwu has proffered evidence sufficient to establish the fourth prong of the prima facie discrimination case.

> ii.     Legitimate, nondiscriminatory reasons

Superior performance in an interview and superior qualifications both constitute legitimate, nondiscriminatory reasons upon which to base an employment decision. See Byrnie v. Town of Cromwell, Bd. of Educ., 243 F.3d 93, 102 (2d. Cir. 2001) (interview performance); Scaria v. Rubin, 117 F.3d 652, 654 (2d. Cir. 1997) (qualifications).  The DOL asserts both that Romano performed better in his interview and had superior qualifications.  Specifically, the DOL asserts that: (1) Romano's interview answers were "detailed," whereas Nwachukwu's were "superficial and lacked substance," DOL Mem. in Supp. at 29; (2) Romano demonstrated greater understanding of and familiarity with the Workforce Development Boards, which "are far more significant partners in terms of accomplishing the work of the agency than the community organizations with which the Plaintiff had worked," id.; (3) she "did not do a good job of explaining the relationship between her experience and the demands of the JCD position, and admitted she would need to learn more," id. at 29-30; and, (4) her "supervisory role as a PSC in 2009 was also less extensive and relevant than Romano's, in terms of both the number of staff overseen and the size and demands of the offices in which they worked," id. at 30.  Accordingly, the DOL has proffered legitimate, nondiscriminatory reasons for its employment decision, thereby carrying its burden.

iii.     Pretext

In order for Nwachukwu's case to continue once the defendant has proffered a legitimate, nondiscriminatory explanation for its actions, she must "come forward with evidence that the defendant's proffered, nondiscriminatory reason is a mere pretext for actual discrimination." Weinstock v. Columbia Univ., 224 F.3d 33, 42 (2d Cir. 2000). Such evidence must be sufficient "to support a rational finding that the legitimate, nondiscriminatory reasons proffered by the defendant were false, and that more likely than not discrimination was the real reason for the employment action. In short, the question becomes whether the evidence, taken as a whole, supports a sufficient rational inference of discrimination." Id. (internal quotation marks and alterations omitted). That said, "[i]n appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose." Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 147 (2000).

One of Nwachukwu's arguments that the proffered justifications are pretextual is that procedural irregularities in her interview tainted the entire interview process and give rise to an inference of racial discrimination. See Opposition to Motion for Summary Judgment 4-5 (Doc. No. 62) ("Pl.'s Opp."). Specifically, she claims that Caron told her that she had been instructed not to ask her any questions during the interview, and that Caron, in fact, "did not ask a single question and kept her head down with no eye contact the entire time." Id. at 4. The DOL denies that Caron made such comments to Nwachukwu. See Caron Aff. ¶ 11.

"Departures from procedural regularity can raise a question as to the good faith of the process where the departure may reasonably affect the decision." Weinstock,

224 F.3d at 45 (internal quotation marks and alterations omitted).  At oral argument, the DOL denied that an interviewer being told not to ask questions of a certain interviewee constitutes a procedural irregularity.  Nwachukwu, on the other hand, argued at oral argument that it was reasonable to infer that interviewers are generally not instructed not to participate in particular interviews.  While an inference can be disproven by the introduction of facts to the contrary, here neither party has introduced any facts that address whether Caron specifically, or DOL interviewers generally, are commonly instructed not to ask certain interviewees questions during their interviews.  Given this, and given the court's conclusion that Nwachukwu's inference is reasonable, the court is compelled, at the summary judgment stage, to draw the inference in Nwachukwu's favor.  Which is to say, the court infers that an interviewer being instructed not to ask a particular interviewee questions constitutes a procedural irregularity.

Even so, the DOL argued at oral argument that Caron not asking Nwachukwu any questions and keeping her head down throughout the interview did not reasonably affect the DOL's decision not to award Nwachukwu the promotion or a second-round interview.  This was because the interviewers asked all the interviewees the same predetermined, finite set of questions, and because Caron took notes during the interview and participated in the deliberation regarding whether to advance Nwachuckwu to the second round.  Nwachukwu, however, argued at oral argument that, regardless of the fact that all the interviewees were asked the same set of questions, Caron's behavior in the interview, which Nwachukwu experienced as odd, threw Nwachukwu off in the interview and negatively affected her performance.  Further, because one of the DOL's proffered justifications for not advancing Nwachukwu was her

inferior interview performance, Nwachukwu argued that the fact that she was thrown off in the interview by Caron's behavior may reasonably have affected the DOL's ultimate decision not to advance her to the second round or award her the promotion.

In sum, there is a genuine issue of material fact as to whether or not Caron was actually instructed not to ask Nwachukwu questions during her interview.  In turn, this issue of fact raises an issue of fact as to whether there were procedural irregularities attendant to Nwachukwu's interview.  And, because procedural irregularities can support an argument that the legitimate nondiscriminatory reasons proffered by the DOL were pretextual, there exists a genuine issue of material fact as to whether Nwachukwu's poor interview performance, which was one of the DOL's preferred legitimate nondiscriminatory reasons, was pretextual.

Nwachukwu also argues that the DOL deliberately misrepresented or disregarded her qualifications in numerous respects.  See Pl.'s Opp. at 7.  "Courts have recognized that an employer's disregard or misjudgment of a plaintiff's job qualifications may undermine the credibility of an employer's stated justifications for an employment decision." Byrnie, 243 F.3d at 103.  The court will only address those of Nwachukwu's arguments that raise a genuine issue of material.

First, Nwachukwu argues that the DOL misrepresented her supervisory experience.  See Pl.'s Opp. at 21-22.  As already discussed, one of the DOL's legitimate, nondiscriminatory reasons for promoting Romano over Nwachukwu was Romano's more extensive supervisory experience.  See DOL Mem. in Supp. at 30. Although Nwachukwu does not dispute that, at the time of the interview, she was only supervising six people and Romano was supervising fourteen, see Nwachukwu Dep. at

58:16-59:1, she has come forward with evidence that, prior to 2009, she had supervised thirteen people, id. at 59:1. At oral argument, the DOL conceded that Nwachukwu had, at some time prior to 2009, supervised thirteen people.

Given that Nwachukwu and Romano had, at various recent points in their tenures at DOL, supervised essentially the same number of people, and given that the DOL contends that Romano's supervisory experience was more extensive than Nwachukwu's solely because he was supervising more people at the time the interview took place, a reasonable jury could conclude that this proffered legitimate nondiscriminatory reason was pretextual. This is because a reasonable jury could conclude that, by focusing only on how many people the interviewees were supervising in 2009, and not looking more broadly at how many they had supervised in the past, the DOL disregarded Nwachukwu's prior supervisory experience and, in so doing, misrepresented her qualifications for the position.

Nwachukwu also contends that the interviewers misrepresented her qualifications by ignoring statements made by Caron, Nwachukwu's supervisor, in which Caron expressed a belief that Nwachukwu was ripe for promotion. See Pl.'s Opp. at 10. There is no dispute that Caron, in both her 2007 and 2008 performance evaluations of Nwachukwu, wrote that she was a "[g]ood candidate for upward mobility." Performance Appraisal 2, 4 (Doc. No. 64 Ex. K) ("Perf. Rev."). Nwachukwu argues that because she "held the position of program services supervisor, the JCD position was the most likely next position for upward mobility." Pl.'s Opp. at 10. However, Caron attested that what she meant by that comment was that Nwachukwu was a good candidate for an "operations coordination position in DOL's Central Office, which would have been a

10

promotion from PSC, but which would have afforded [the plaintiff] more guidance from a supervisor than the JCD positions would." Caron Aff. ¶ 12.  Nwachukwu, at oral argument, attacked that interpretation as a post-hoc explanation that does not accord with what Caron truly meant to convey in the performance evaluations.

Although Nwachukwu does not introduce any evidence that affirmatively supports the conclusion that Caron, when she wrote the performance evaluations, had in mind that Nwachukwu would be a good candidate for a JCD position, the fact remains that the performance evaluations are vague as to which position Caron was envisioning Nwachukwu advancing to when she wrote that Nwachukwu was a "[g]ood candidate for upward mobility."  As a result, a genuine issue of material fact exists regarding what Caron meant by her statement in the performance evaluations.  And, because what Caron meant when she wrote those evaluations affects the determination as to whether or not the DOL disregarded Caron's performance evaluations, a genuine issue of material fact exists as to whether the DOL disregarded Nwachukwu's qualifications in this regard.

All that being said, Nwachukwu still must, to defeat summary judgment, raise a genuine issue of material fact not just that the DOL's proffered justifications were pretextual, but that "more likely than not discrimination was the real reason" she did not get the promotion. Weinstock, 224 F.3d at 42.  However, as already noted, "[i]n appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose." Reeves, 530 U.S. at 147.  In this case, Nwachukwu has raised a number of genuine issues of material fact regarding whether the DOL's proffered justifications were

11

pretextual. Specifically, she has raised issues of fact as to whether there were procedural irregularities attendant to her interview, and as to whether the DOL disregarded her previous supervisory experience and Caron's comments about her being a good candidate for promotion. Even if Nwachukwu cannot introduce any additional evidence to show that race discrimination was the real reason she did not get the promotion, a reasonable jury could infer that that was the reason based on the evidence of pretext Nwachukwu has presented.

That said, Nwachukwu does argue that a comment made by Polzella to her about her accent is proof that the reason she did not get the promotion was because of race discrimination. See Nwachukwu Dep. at 39:20-40:8. Specifically, Nwachukwu claims that Polzella told her that, "my accent, the way I, you know, did the presentation, my responses, wasn't the type of, um, skill that they – because so much I will be dealing with the public in other words, okay, and so the accent was that, was part of the reason." Id. at 40:1-5. Polzella denies that he made any comment to Nwachukwu about her accent. Polzella Dep. at 48:7-15. Further, the DOL argues that, even assuming Polzella did make such a comment, there was nothing inherently discriminatory about it because public speaking is a component of the JCD position. See DOL Mem. in Supp. at 24. Indeed, "[a]n adverse employment decision may be predicated upon an individual's accent when – but only when – it interferes materially with job performance. There is nothing improper about an employer making an honest assessment of the oral communications skills of a candidate for a job when such skills are reasonably related to job performance." Meng v. Ipanema Shoe Corp., 73

F.Supp.2d 392, 399 (S.D.N.Y. 1999) (quoting Fragante v. City and Cty. of Honolulu, 888 F.2d 591, 596-97 (9th Cir. 1989)).

However, even if a comment made about one's accent is not inherently discriminatory, that does not mean that any comment made about one's accent is inherently nondiscriminatory.  In this case, the DOL's claim that Polzella's comment was innocuous is particularly suspect given that Nwachukwu's accent, and its effect on her ability to engage in public speaking, was not one of the legitimate, nondiscriminatory reasons the DOL proffered for why she did not advance to the second round.  See generally Pl.'s Mem. in Opp. Ex. E (Doc. No. 64-1) ("DOL CHRO Stmt."); DOL Mem. in Supp.  As a result, genuine issues of material fact exist both as to whether Polzella made the comment in the first place and if he did, what he meant by it.[1]

In sum, genuine issues of material fact exist as to both whether the legitimate, nondiscriminatory reasons proffered by the DOL for why Nwachukwu did not advance to the second round were pretextual, and whether they were pretextual for race discrimination.  As a result, the DOL has failed to carry its burden at the summary judgment stage, and its Motion for Summary Judgment as to the racial discrimination claim is denied.

---

[1] The court notes the DOL's argument that, even if Nwachukwu did have a claim for discrimination on account of Polzella's comment about her accent, she could only claim that she was discriminated on the basis of national origin, not race.  See DOL Mem. in Supp. at 23.  However, the court need not decide whether a comment about one's accent, to the extent that it can give rise to a discrimination claim, can only give rise to a national origin claim.  This is because Nwachukwu has raised enough issues of fact as to whether the DOL's proffered justifications were pretextual to allow a jury to conclude that they were pretextual for race discrimination, even without the evidence related to Polzella's comment.

13

B. Retaliation claim

Retaliation claims brought under Title VII are analyzed under the same burden-shifting framework outlined in McDonnell Douglas and discussed earlier in connection with the plaintiff's race discrimination claim.  See Jute v. Hamilton Sundstrand Corp., 420 F.3d 166, 173 (2d Cir. 2005).  First, the plaintiff must first establish a prima facie case, then the defendant must proffer a "legitimate, non-retaliatory reason for the adverse employment action," then the plaintiff "must show that retaliation was a substantial reason for the adverse employment action."  Id.

i. Prima Facie Case of Retaliation

To establish a prima facie case, the plaintiff must show: "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action."  Id. (internal quotation marks omitted).  The DOL concedes that Nwachukwu has established the first three requirements, and argues only that she has not established the final requirement.  See DOL Mem. in Supp. at 33.

The causal connection can be established either through direct evidence or "indirectly by showing that the protected activity was closely followed in time by the adverse action."  Summa v. Hofstra Univ., 708 F.3d 115, 127-28 (2d. Cir. 2013).  By way of direct evidence, Nwachukwu claims that, in 2008, Mayfield told her that "she would probably not be promoted in the agency because of her prior lawsuit unless Mayfield was there."  Plaintiff's Local Rule 56(a)(2) Statement ¶ 3 (Doc. No. 63); see also Nwachukwu Dep. at 44:4-13.  Indeed, Nwachukwu was only awarded the Hartford JCD position in 2008 because Mayfield overruled the interview panel's recommendation

and instead awarded the position to Nwachukwu. See Polzella Dep. at 127:18-21. By 2009, when Nwachukwu interviewed for the Waterbury JCD position, although Mayfield was still the DOL Commissioner, she was terminally ill. See Pl.'s Mem. in Opp. at 3 n. 1. Further, a reasonable jury could infer that Mayfield was not actively involved in the 2009 interview process from the fact that it was not Mayfield who approved of Romano's hiring, but rather Deputy DOL Commissioner Linda Agnew. The combination of Mayfield's 2008 comment to Nwachukwu, the role Mayfield played in securing the Hartford JCD position for Nwachukwu, and Mayfield's absence from the proceedings in 2009 establishes a prima facie case of retaliation.

      ii.    <u>Legitimate, non-retaliatory reasons</u>

The court has already discussed the legitimate reasons the DOL has proffered as for why it did not promote Nwachukwu in its discussion of Nwachukwu's race discrimination claim. See infra § IV.A.ii. These apply equally to Nwachukwu's retaliation claim. See DOL Mem. in Supp. at 39.

      iii.    <u>Retaliation a substantial reason for non-promotion</u>

A reasonable factfinder could conclude, based on the evidence that Nwachukwu has introduced relating to Mayfield's comment to her, the actions Mayfield took in 2008, and the lack of action Mayfield took in 2009, and the inferences that can be drawn from these pieces of evidence, that retaliation played a substantial role in Nwachukwu not being advanced to the second round interview or receiving the promotion. Accordingly, the DOL's Motion for Summary Judgment on the retaliation claim is denied.

**V. CONCLUSION**

For the above-stated reasons, the DOL's Motion for Summary Judgment (Doc. No. 54) is **DENIED.**

**SO ORDERED.**

Dated at New Haven, Connecticut this 24th day of November 2015.

                /s/ Janet C. Hall
                Janet C. Hall
                United States District Judge